## BAILEY *v.* GOLDBERG.

1. CONTRACTS — ONE CONSENTING TO CONTRACT FOR PLANS FOR BUILDING BOUND THEREBY ALTHOUGH NOT SIGNING IT.

> A contract in writing authorizing an architect to prepare plans and specifications for an apartment building, finance it, supervise the construction, and obtain bids, being one which is valid though not in writing, is binding on one of the owners who consented to all that was done but did not sign the contract.[1]

2. SAME—"SATISFACTION CONTRACT."

> Although the plans and specifications were to be to the owners' satisfaction, they did not have the right to arbitrarily halt the work after the preliminary work had been agreed upon, and the plans and specifications had been completed to their satisfaction; it not being in its entirety a "satisfaction contract."[2]

3. SAME—TRIAL—FRAUD—INSTRUCTION.

> Where the owners expressed dissatisfaction with the plans and specifications after having approved them, an instruction by the trial court, in an action by the architect for services therefor, requiring proof of defendants' fraud in canceling the contract because of alleged dissatisfaction, as a condition to recovery by plaintiff, was most favorable to defendants.[3]

4. SAME—BREACH OF CONTRACT—FRAUD.

> The finding of the jury that defendants were guilty of fraud in canceling the contract, *held*, warranted by the evidence.[4]

Error to Wayné; Marschner (Adolph F.), J.    Submitted June 16, 1926.    (Docket No. 63.)    Decided July 22, 1926.

Assumpsit by R. Arthur Bailey against Benjamin Goldberg and another for breach of a contract of em-

[1]Contracts, 13 C. J. § 824; [2]Id., 13 C. J. § 770; [3]Id., 13 C. J. § 1027; [4]Id., 13 C. J. § 985.

ployment.  Judgment for plaintiff.  Defendants bring error.   Affirmed.

*William Henry Gallagher*, for appellants.

*Henry G. Nicol* and *George B. Murphy*, for appellee.

SNOW, J.    Plaintiff, an architect, in May, 1922, contracted with the defendants, who were the owners of a lot on Gladstone avenue in the city of Detroit, to prepare plans and specifications for, and to finance and supervise the construction of, an apartment house on defendants' lot.    The contract was reduced to writing and signed by all of the parties excepting defendant Dizik.    It is conceded that the writing, signed by the other two, evidenced whatever contract was made between the parties.    This writing, among other things, in effect provided that plaintiff was to draw and prepare *to the owners' satisfaction* a complete set of plans and specifications; to finance the building by a first mortgage bond issue, and to superintend the construction; to solicit bids *upon approval of owners of the plans and specifications;* and upon performing these obligations was to be paid for his services five per cent. of the cost of construction, exclusive of the land.

Plaintiff claims that while defendant Dizik did not sign the contract he consented to and acquiesced in it and was a party to the same at all times until it was finally breached by him and his associate Goldberg. The record fully supports plaintiff's contention in this respect, and the contract being one which is valid though not in writing, Dizik must be regarded as a party to it as though he had affixed his signature thereto.    Plaintiff brings this action against the defendants to recover the commission he had earned under the contract, claiming that after he had completed the plans and specifications, secured bids for

much of the construction, and had arrangements practically completed for the financing of the proposition, the defendants, not because of any dissatisfaction with anything he had done, but without right, fraudulently and in bad faith, while bids were being solicited, discontinued the project entirely and told him they were not going ahead.    That they assigned no reason at the time, but that afterwards, when plaintiff demanded pay for the work he had already done, they found fault with the plans and maintained they were not to their satisfaction, and that they would not approve of them.    From a judgment in favor of plaintiff, defendants bring writ of error.

As suggested in appellants' brief, the principal questions involved are whether or not the contract is a so-called "satisfaction contract," and, if so, are the defendants liable in the absence of fraud; was there fraud on the part of defendants in refusing to proceed with the contract; and is the contract unenforceable because impossible of performance so far as the financing was concerned?

We are not impressed with the claim of defendants that the contract in question is in its entirety of that class which makes its completion a purely personal matter with them, to be ended at their pleasure and without reason excepting their own desire.    The purpose of the undertaking was to get an apartment house built on their land without original cost to them excepting the land itself.    They were, of course, interested in the architectural design of the building, its general plan, the size, the approximate cost, and the material to be used.    But after these general preliminaries had been agreed upon (as they were in the instant case), and when plans and specifications had been completed to the owners' satisfaction, we cannot agree that the defendants would then have the right to arbitrarily halt the work being done under the contract, because of alleged dissatisfaction with

it, particularly if such dissatisfaction did not in fact exist, and was not urged by them in good faith.

As this court has said, in discussing a case similar to the one at bar:

"The dissatisfaction must be actual and not feigned, real and not merely pretended." *Hutton* v. *Sherrard,* 183 Mich. 360 (L. R. A. 1915E, 976), and cases there cited.

The charge of the court in this connection was all defendants could possibly contend for. It was as follows:

"Although the defendants had the right to terminate the contract if the services rendered by the plaintiff were not satisfactory to them, in the exercise of said option or right to terminate the agreement or contract between them the defendants could not arbitrarily terminate the contract, but any alleged dissatisfaction by them must be in good faith and in no event could said termination be based on bad faith.

"I charge you that it is the contention of the plaintiff that the defendants fraudulently canceled or terminated the contract in question, Exhibit 1. Now, fraud may be proven from any fact or circumstance which satisfies the mind by a preponderance of the evidence in any given case of its existence, and while fraud is not to be assumed without any proof, it may be shown, as I have stated, from facts and surrounding circumstances and determined from the evidence in that manner.

"In order to ascertain whether the defendants breached said contract in bad faith, you may take into consideration the evidence adduced here, the conflicting contention of the plaintiff relative to what objections were made, if any, by the defendants to the plaintiff at the time he claims they terminated his employment, whether the objections raised were real, fancy or imaginary, and all the attending circumstances surrounding the transaction at the time of the alleged breach.

"If you find and believe from the testimony here that the defendants terminated said contract between themselves and the plaintiff in bad faith, and that the

plaintiff performed his part of the agreement in accordance with the terms of the said contract, then I charge you your verdict here must be in favor of the plaintiff for such damages as you find and believe from the testimony he suffered by virtue of the defendants' breach of contract."

The court also charged the jury:

"The burden of proving the bad faith of the defendants rests upon the plaintiff in this case.    If an owner in good faith rejects plans and specifications prepared by an architect, he is under no obligation to specify the particulars to which he objects.    If the objection is from the structure, the general character of the building, rather than some particular objection that might be specified, it is sufficient if he is honestly dissatisfied with the plans submitted however unreasonable or whimsical his dissatisfaction may be.

"Fraud is not to be presumed.    It must be proven like any other fact in the case.    As I have stated, the burden therefore rests upon the plaintiff of establishing by evidence which fairly leads you to the conclusion that fraud was practiced by the defendants in this case."

Proof of fraud upon defendants' part in canceling the contract was thereby made a requirement for recovery.    This was most favorable to defendants.    The jury, by rendering a verdict for the plaintiff, found defendants guilty of fraud, and the record discloses an abundance of evidence from which it was warranted in arriving at this conclusion.    Defendants had approved the final sketch, and directed a complete set of drawings and specifications; they had been frequently consulted by plaintiff and gave approval to his work as it progressed; the working drawings and the plans and specifications were out and in the hands of bidders, and defendants themselves had solicited some of the bids; they sold the land shortly afterwards.

Defendants' further claim that plaintiff could not have financed the construction of the building in any

event is not borne out by the record.    In fact, the contract was canceled before the necessity of closing financial arrangements existed.    Plaintiff was negotiating with bonding companies to secure the loan, and had made considerable progress, and probably would have succeeded.

The trial court was right in submitting the case to the jury, and the rights of defendants were fully protected by a careful, comprehensive, and proper charge.

Judgment is affirmed, with costs to the appellee.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.